IN THE
UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION

BRANDON COLE,
    Plaintiff,

v.

WILLIAM LEE, *et al.*,
    Defendants.

Case No. 1:22-cv-01445-JEH

### Order

Plaintiff, Brandon Cole, filed suit against Defendants under 42 U.S.C. § 1983, alleging excessive use of force and failure to intervene in violation of the Eighth Amendment.

This matter is now before the Court on a Motion for Summary Judgment (Doc. 53) filed by Defendants. For the reasons stated herein, Defendants' Motion is GRANTED.

**I**

The following background facts are taken from the statement of undisputed facts sections in Defendants' memorandum of law in support of their summary judgment motion. Doc. 54, p. 2-6 ¶¶ 1-41. Although Plaintiff timely filed a response (Doc. 56) to Defendants' motion, Plaintiff did not respond to any of Defendants' proposed undisputed material facts nor did Plaintiff propose additional material facts. Pursuant to Local Rule 7.1(D)(2)(b)(6), Defendants' proposed facts are therefore deemed admitted.[1] Further, the Court finds that Defendants' exhibits filed with their

---

[1] A district court does not abuse its discretion by strictly enforcing local and procedural rules, even against a pro se litigant. *Robinson v. Wexford Health Sources, et al.*, No. 22-1717, 2024 WL 676433, at *2 (7th Cir. Feb. 20, 2024) (unreported), citing *McCurry v. Kenco Logistics Services, LLC*, 924 F.3d 783, 737 n.2 (7th Cir. 2019).

memorandum support their proposed facts.

During all times relevant to this case, Plaintiff was an individual in the custody of the Illinois Department of Corrections ("IDOC"), housed at Pontiac Correctional Center ("Pontiac"). Doc. 54, p. 2 ¶ 1.

The incident about which Plaintiff filed his Complaint in this case occurred on May 23, 2022. Doc. 54, p. 2 ¶ 2. On that date, Defendants Trever Farley, William Byrd, Wyatt Miller, Dakota Chavez, Jahmeek Garrison, Jared Shaw, and Corey Jefford were employed as correctional officers at Pontiac, and Defendant William Lee was employed as a correctional lieutenant at Pontiac. Doc. 54, p. 75, p. 4 ¶ 2, p. 18 ¶ 142, p. 27 ¶ 210.

The incident at issue occurred in a yard pod at Pontiac. Doc. 54, p. 2 ¶ 2. A yard pod is an outside cell where individuals who are housed in restrictive housing exercise their yard time. Doc. 54, p. 3 ¶ 11. On the date in question, at approximately 12:05 p.m., nonparty Behavioral Health Therapist ("BHT") Crystal Carlson was walking past Plaintiff while he was in the yard pod. Doc. 54, p. 3 ¶ 12. Plaintiff was masturbating while yelling sexual statements at Carlson. *Id*. The cellhouse lieutenant was notified, and the Emergency Response Team ("ERT" also known as "TAC" team) was notified to remove Plaintiff from the yard. *Id*.

When the ERT arrived at Plaintiff's yard pod to extract him, a team member ordered Plaintiff to cuff up. Doc. 54, p. 3 ¶ 13. Plaintiff refused three direct orders to cuff up. Doc. 54, p. 3-4 ¶¶ 14, 16-17. After three refusals, bursts of pepper spray (also known as "OC" spray) were introduced in an attempt to gain compliance with the direct orders. Doc. 54, p. 4 ¶ 17. A total of nine subsequent direct orders were given, and nine bursts of pepper spray were introduced before the ERT ever entered Plaintiff's yard pod. *Id*.

Plaintiff admits that he "probably" threatened members of the ERT before they entered the yard pod. Doc. 54, p. 4 ¶ 18. While the ERT was giving Plaintiff direct orders to cuff up, Plaintiff threw an unknown substance onto them. Doc. 54, p. 4, ¶

19.

After the ERT entered the yard pod, Plaintiff became combative and aggressive, and an additional burst of pepper spray was administered. Doc. 54, p. 4 ¶ 23. Plaintiff admits that when the ERT came into the yard pod, he was fighting them and hit some of them in their body and helmets. Doc. 54, p. 4 ¶¶ 21-22. Plaintiff continued to be combative, the ERT gave orders to stop resisting, and closed fist strikes were delivered to large muscle groups to gain Plaintiff's compliance. Doc. 54, p. 5 ¶ 24. Plaintiff was eventually handcuffed and removed from the yard pod. Doc. 54, p. 5 ¶ 25.

Plaintiff admits that Defendants Garrison and Chavez remained outside of the yard pod. Doc. 54, p. 6 ¶ 39. Plaintiff alleges that Defendant Lee should have stopped the other officers because he was a lieutenant. Doc. 54, p. 6 ¶ 38.

After Plaintiff was removed from yard pod, medical professionals came to see him in the holding tank. Doc. 54, p. 5 ¶ 28. Plaintiff was seen by an RN at approximately 3:03 p.m., who treated him for OC exposure and did not note any other injuries. Doc. 54, p. 5 ¶ 29. At approximately 3:12 p.m., Plaintiff was seen by mental health providers who evaluated him for potential suicide risk. Doc. 54, p. 5 ¶ 30. Plaintiff denied suicidal or homicidal ideations. *Id*.

Plaintiff was written disciplinary tickets by Defendants Farley, Byrd, Jefford, Miller, and Shaw for disobeying a direct order. Doc. 54, p. 5 ¶ 31. Plaintiff was also written disciplinary tickets by Defendants Byrd and Miller for assault. Doc. 54, p. 5-6 ¶¶ 31-32. In a hearing on the disciplinary tickets, Plaintiff admitted that he punched correctional officers and was guilty of assault. Doc. 54, p. 6 ¶ 33. Based on the records, Plaintiff struck Defendants Byrd and Miller in the face, head, and chest. Doc. 54, p. 6 ¶ 32.

Plaintiff alleges that, as a result of the extraction from the yard pod on May 23, 2022, his migraine headaches have worsened, he suffers from nightmares, his vision has worsened, his hearing worsened, he suffered neck pain, and his back pain worsened. Doc. 54, p. 6 ¶ 34. Plaintiff admits that prior to the extraction on May 23,

2022, he already was hard of hearing, had migraine headaches, and back pain. Doc. 54, p. 6 ¶ 35. No medical professionals have told Plaintiff that any of his alleged injuries or pain are a result of the extraction on May 23, 2022. Doc. 54, p. 6 ¶ 36.

Plaintiff admits that he has assaulted staff 61 times over the course of his incarceration. Doc. 54, p. 6 ¶ 37.

An investigation was completed due to the fact that force was used during Plaintiff's extraction on May 23, 2022. Doc. 54, p. 6 ¶ 41. The investigation concluded that Defendants complied with departmental rules, 20 Ill. Admin. Code 501.40 *et seq*, related to the use of force. *Id*.

## II

Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). All facts must be construed in the light most favorable to the non-moving party, and all reasonable inferences must be drawn in his favor. *Ogden v. Atterholt*, 606 F.3d 355, 358 (7th Cir. 2010). The party moving for summary judgment must show the lack of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). In order to be a "genuine" issue, there must be more than "some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

## III

As previously summarized, in its Merit Review Order (Doc. 6) the Court allowed Plaintiff to proceed on Eighth Amendment claims of excessive force against Defendants Farley, Byrd, Miller, Chavez, Garrison, Shaw, and Jefford and failure to intervene against Defendant William Lee.

### A

To succeed on his excessive force claim, Plaintiff must show that the force used by Defendants was applied maliciously and sadistically, not in a good faith effort to maintain or restore discipline. *Whitley v. Albers*, 475 U.S. 312, 320-21 (1986).

When using force, prison officials must take into account "the very real threats th[at] unrest presents to inmates and prison officials" while also considering "the possible harms to inmates against whom force might be used." *Id.* at 320. "Despite the weight of these competing concerns, corrections officials must make their decisions 'in haste, under pressure, and frequently without the luxury of a second chance.'" *Hudson v. McMillian*, 503 U.S. 1, 6 (1992), *quoting Whitley*, 475 U.S. at 320. As such, "prison administrators…should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." *Bell v. Wolfish*, 441 U.S. 520, 547 (1979); *see also Guitron v. Paul*, 675 F.3d 1044, 1046 (7th Cir. 2012) (an "error of judgment" identified only in retrospect "does not convert a prison security measure into a constitutional violation").

The Court must consider several factors to determine if an official exerted force in a good faith effort to maintain or restore discipline, or if the official did so maliciously and sadistically to cause harm. *Whitely*, 475 at 320-21. These factors include: (1) the need for application of force; (2) the relationship between the need and the amount of force that was used; (3) the extent of the injury; (4) the threat reasonably perceived by the responsible official; and (5) any efforts made to temper the severity of a forceful response. *Id.* at 321.

Defendants argue that their use of force was justified under the circumstances created by Plaintiff, and that Plaintiff is attempting to hold Defendants individually liable for the collective actions of the whole even while admitting that certain Defendants were not inside the yard pod.

Addressing the latter argument first, the undisputed facts establish that Defendants Garrison and Chavez remained outside of the yard pod during the use of

force to extract Plaintiff on May 23, 2022. "A plaintiff bringing a civil rights action must prove that the defendant personally participated in or caused the unconstitutional actions." *Duncan v. Duckworth*, 644 F.2d 653, 655 (7th Cir. 1981). Therefore, Defendants Garrison and Chavez are entitled to summary judgment in their favor.

Applying the five factors outlined in *Whitley* to the undisputed record at summary judgment, no reasonable jury could find that the remaining Defendants' use of force against Plaintiff was done maliciously, for the purpose of causing harm. Rather, all evidence supports that the force was applied in a good faith effort to restore and maintain discipline.

Both the exhibits submitted by Defendants and Plaintiff's own admissions establish that Defendants reasonably perceived a threat when Plaintiff sexually and verbally harassed a BHT on the yard, refused repeated direct orders from correctional staff to cuff up and leave the yard, verbally threatened Defendants, and became increasingly combative and aggressive. Defendants also reacted to Plaintiff's actions with the knowledge that he had assaulted staff approximately 60 times

The record establishes that Defendants attempted to temper the severity of the force used in response, as they gave at least three direct orders for Plaintiff to cuff up before they administered any pepper spray. *See Musgrove v. Detella*, 74 F. App'x 641, 645 (7th Cir. 2003) ("The use of mace violates the Eighth Amendment only if it is used 'in quantities greater than necessary or for the sole purpose of punishment or the infliction of pain.'"), *quoting Soto v. Dickey*, 744 F.2d 1260, 1270-71 (7th Cir. 1984).

Even when Plaintiff repeatedly refused, threw a liquid at Defendants, and subsequently struck Defendants Byrd and Miller in the face, head, and chest, Defendants gave at least nine more direct orders, interspersed with additional bursts of pepper spray, before resorting to greater physical force in the form of closed fist strikes targeted to Plaintiff's large muscle groups. *See Guitron*, 675 F.3d at 1046 (holding that a defendant "did not violate the constitution by applying additional

force" when the plaintiff "disobeyed a command that was designed to maintain order within the prison" and then "remained defiant" after the application of "modest force").

As for the extent of the injury, the record shows that Plaintiff received medical attention following his extraction, and he was treated for OC exposure with no other identified injuries. Although Plaintiff maintains he suffered vision and hearing problems, migraines, and body aches, the undisputed record also establishes that Plaintiff already suffered from these conditions and there is no medical evidence that the events of May 23, 2022, worsened those symptoms.

The Court acknowledges that "summary judgment is often inappropriate in excessive-force cases because the evidence surrounding the officer's use of force is often susceptible of different interpretations." *Cyrus v. Town of Mukwonago*, 624 F.3d 856, 862 (7th Cir. 2010). However, here the undisputed material facts establish that Defendants applied gradually escalating physical force in response to Plaintiff's repeated refusals to follow direct orders and increasing physical aggression, including his assault of Defendants Byrd and Miller. Defendants did so in compliance with the Illinois Administrative Code's authorization for the use of force and under the pressure of ongoing threats and assault by Plaintiff. *See Bell*, 441 U.S. at 547; *Whitley*, 475 U.S. at 320.

Based upon the foregoing, the Court holds that a reasonable factfinder could conclude only that Defendants Farley, Byrd, Miller, Shaw, and Jefford applied force in a good faith effort to maintain or restore discipline. These Defendants are therefore entitled to summary judgment in their favor.

B

A claim for failure to intervene fails when there is no underlying constitutional violation. *See Gill v. City of Milwaukee*, 850 F.3d 335, 343 (7th Cir. 2017), *citing Leaf v. Shelnutt*, 400 F.3d 1070, 1093 (7th Cir. 2005). Because Plaintiff's excessive force claim does not survive summary judgment, there was no underling constitutional violation

that could give rise to liability for failure to intervene.

For these reasons, Defendant Lee is also entitled to summary judgment in his favor on Plaintiff's failure to intervene claim.

## IV

For the foregoing reasons, Defendants' Motion for Summary Judgment [53] is GRANTED. Summary judgment shall enter in favor of Defendants and against Plaintiff.

If Plaintiff wishes to appeal this judgment, he must file a notice of appeal with this Court within 30 days of the entry of judgment. Fed. R. App. P. 4(a)(4). A motion for leave to appeal in forma pauperis MUST identify the issues Plaintiff wishes to present on appeal, to assist the Court in determining whether the appeal is taken in good faith. *See* Fed. R. App. P. 24(a)(1)(c); *see also Celske v Edwards*, 164 F.3d 396, 398 (7th Cir. 1999) (an appellant should be given an opportunity to submit a statement of his grounds for appealing so that the district judge "can make a reasonable assessment of the issue of good faith."); *Walker v. O'Brien*, 216 F.3d 626, 632 (7th Cir. 2000) (providing that a good faith appeal is an appeal that "a reasonable person could suppose…has some merit" from a legal perspective). If Plaintiff does choose to appeal, he will be liable for the $605.00 appellate filing fee regardless of the outcome of the appeal. If the Court allows him to proceed on appeal in forma pauperis that finding would allow Plaintiff to pay the appellate filing fee over time but would not release him from having to pay the fee.

This case is terminated.

*It is so ordered.*

Entered on August 13, 2025.

s/Jonathan E. Hawley
U.S. DISTRICT JUDGE